JACKSON R. MYERS *versus* THE YORK AND CUMBERLAND RAILROAD COMPANY.

At common law the assignee of a *chose in action* cannot maintain a suit in his own name unless there had been an assent to the assignment and a promise by the debtor to pay the assignee.

It is the province of the court to decide the negotiability of instruments, unless in new cases where the law merchant is doubtful, where evidence of custom may be submitted to the jury.

In the absence of proof of custom as to the negotiability of coupons or interest warrants disconnected from the bonds with which they were issued, an independent, negotiable character cannot be given them without the interposition of the legislature, unless the intention of the party issuing them distinctly so appears upon the face of the coupon itself.

Myers v. York and Cumberland Railroad.

REPORTED by RICE, J., at *Nisi Prius*.

This is an action of assumpsit, the statement of which fully appears in the opinion of the court.

*F. O. J. Smith,* counsel for plaintiff, argued that the coupon upon which the action is brought is negotiable as an attachee of bond 149, which is negotiable, and to which it refers.

*J. C. Woodman,* counsel for defendant, examined the records of the corporation minutely, critically, and at length, in order to show that the officers were not authorized to issue bond 149 with coupons. He also submitted an able argument against the constitutionality of the 248th chapter of the statute for 1856, as applicable to this case. These portions of the argument are omitted, as the case did not turn upon either of them.

He also argued that the certificate on which the suit is brought, was issued without consideration. The bonds were on interest. It is therefore apparent, that Mr. Myers has received the whole pay for his labor and material under the contract, and that portion of it which was to be paid in bonds, in the six per cent. bonds of the company; and that if this interest certificate contains any promise at all, on the part of the corporation, which he denied, it was without consideration. The bonds were under seal. They import a consideration, and must be paid, principal and interest. If the certificates must be paid also, it must be without any consideration.

The bonds are "payable to bearer," with interest. They are "customably transferable by delivery," and have passed into the hands of third parties. They are negotiable, and must be paid, principal and interest. 1 Parson's Con., 240; Bank of St. Clairville v. Smith, 5 Ham. R., 222.

The certificate in suit is not a coupon. See the definition of *coupon,* Webster's Dictionary, Bouvier's Law Dictionary. The certificate is not a coupon, because it was never annexed to any bond or principal contract.

The certificate was not payable to "bearer" or "holder,"

16

in terms, or to the holder by any other equivalent words. It was not negotiable, and as it was not issued to the plaintiff, he can maintain no action upon it. 1 Parsons on Con., pp. 202 to 208 and 239 and 240; Statute of Anne, 3 and 4, chap. 9, sec. 1; Chitty on Bills, 196; Brown v. Gilmore and al., 13 Mass. R., 160; True v. Fuller, 21 Pick. R., 141; Ball v. Allen, 15 Mass. R., 433; Douglass v. Wilkeson, 6 Wend. R., 637, 643; Moody v. Threlkeld, 13 Georgia R., 55; 2 Comyn's Contracts, 536. The certificates not being negotiable, if they contain contracts, can be enforced only in the name of John G. Myers, to whom they were issued. But if he should commence a suit on them, he would fail for want of consideration.

If it be said that the word " coupon," in itself, implies negotiability without the word " bearer," our first answer is, that these certificates were not coupons. Secondly, we say, the word " coupon" does not imply a negotiable contract, without the word " bearer," " holder," or equivalent words. No inference can be drawn that the certificate was intended to be negotiable, because the bond was payable to bearer, but the reverse.

But this certificate not being a coupon, must be construed by itself from the words it contains. If the word " bearer" was struck out of the bond, then it would not be payable to any person in particular; it would not be a negotiable contract; and no obligation or promise could arise from the corporation to pay the money secured in the bond to any other person than John G. Myers, from whom the consideration moved. Yet the argument on the other side would make this certificate miscalled a coupon, a negotiable contract, although issued without date, without consideration, without being made payable to bearer or holder, or to any known payee; and although issued in company with a bond, that was issued upon good consideration, and a regular date, but without terms of negotiability! To suppose such a result, would be to make the corporation promise the whole principal and interest to John G. Myers alone, and at the same

time promise to pay other sums equal to the interest, nine days after said interest should be paid, to as many different persons as might happen to purchase these certificates. And this by a forced implication, that the certificate contains a negotiable contract payable to "bearer," when it does not contain the word bearer nor any equivalent word or words!

To the argument, that these are negotiable contracts, because they refer to the *bonds* by number, and the *bonds* are negotiable, it is answered, that the reference by number to the bonds, if it shows anything, shows the certificate is an imperfect instrument—that it belongs to something else—to some bond. There is nothing to show that the bond belongs to the certificate. But the number of the bond on the certificate is evidence to show that the certificate belongs to bond 149; that it is a mere cast of interest for the bond holder; that it has gone astray; that it is not negotiable as a contract independently and separately from the bonds.

RICE, J. This is an action of assumpsit brought by the plaintiff as the endorsee or assignee of the following instrument:

> " COUPON ⎰ YORK & CUMBERLAND ⎱ BOND CERTIFICATE
>   No 6. ⎱   R. R. COMPANY. ⎰   No. 149.
> On the tenth day of February, 1854, the York & Cumberland Railroad Company will pay thirty dollars on this coupon, at the office of said company, in the city of Portland, Maine.
>                          NATH'L J. HERRICK, Treasurer."

The writ contains two counts, one declaring specially upon the same instrument, as being payable to bearer, and averring the plaintiff to be the bearer thereof; the other for money had and received, to support which the same instrument or paper was relied upon.

The case which comes before us on report from the presiding judge, finds that the paper declared on, together with many others of a similar character, was delivered to J. G. Myers, at the same time that said Myers received from the defendant corporation, and receipted for, sixteen bond cer-

tificates, amounting in the aggregate to the sum of $15,500. These bond certificates were numbered from 142 to 157 inclusive, and bore date February 1st, 1851, were payable to bearer, in twenty years, with interest thereon, payable semi-annually from the date thereof. Each of said bonds was for the sum of $1000, except No. 157, which was for the sum of $500. No interest warrants or coupons were attached or annexed to any of said bonds, nor is there any reference therein to any such interest warrants or coupons.

J. G. Myers testified for the defendants, that he received from the company July 1st, 1851, bond certificates to the amount of $15,500; that bond No. 149 was among them; that he gave his receipt for said bonds, and at the same time he received a series of coupons connected together, corresponding to each bond by number, but on sheets of paper separate from the bonds; that the bonds were all in the same form, except the number, and that all the sheets of coupons were also in the same form; that he gave the aforesaid receipt in the bond book, July 1, 1851, and never allowed the company anything in addition to the $15,500, for the bonds mentioned in the receipt.

This witness also testified on cross-examination, subject to defendant's objection, that he received the coupons to represent the interest on the bonds; that the coupons corresponded with the bonds by number; that he received them with the bonds as pertaining to them, and that when he took the bonds he did not know that they bore interest independent of the coupons.

It is admitted that bond certificate, No. 149, became the property of William H. Baxter, in 1854, for a valuable consideration, and has remained his to the present time.

There is no evidence showing at what time or for what consideration the certificate or coupon in suit came into the hands of the plaintiff.

It is contended by the defendants that the evidence in the case shows that Herrick, who signed the certificate in suit,

as treasurer, was not authorized so to do by the company. But as the case will turn upon other considerations, we do not express any opinion upon that point.

In view of these facts the defendants contend that the plaintiff cannot maintain this action, because the instrument in suit was issued to the original holder without any legal consideration; that it is not negotiable, and therefore the plaintiff cannot maintain an action upon it in his own name, as endorser or bearer; that if it has ever been assigned to him, that assignment has never been assented to by the defendants, nor have they ever agreed to pay the same to the plaintiff; that no consideration has ever moved from the plaintiff to the defendants, nor does any privity of contract exist between them.

At common law the assignee of a *chose in action* cannot maintain a suit in his own name, unless there has been an assent to the assignment and a promise to pay the assignee on the part of the debtor. Long v. Fisk and al., 11 Maine R., 185. No such assent or promise has been shown in the case at bar. The action, therefore, is not maintainable on that ground.

It is, however, contended, that the instrument is negotiable, and that the plaintiff may maintain this action as the bearer thereof.

The paper itself, considered as an independent instrument, contains no words of negotiability. It is neither payable to *order* nor *bearer*, nor does it contain any words of similar import showing that it was the intention of the makers that it should have currency as an independent negotiable paper. Without some such terms it is not negotiable. Story on Promissory Notes, sec. 44.

It is, however, further contended, that the paper declared on is a " coupon," pertaining to, and in fact a part of bond certificate No. 149, which is negotiable, and that as part of that bond this coupon is rendered negotiable either with or without the bond ; that it is a new species of paper recently introduced into the commercial world, and though not con-

taining in itself those technical words which have heretofore been deemed necessary to give negotiability to commercial paper, has in it, nevertheless, all the elements necessary to impart to it that character, and has, in fact, by the commercial world, been received and adopted as a new species of commercial paper.

Mr. Parsons, in the first vol., p. 240, of his work on contracts, says : " We regard the English authorities as making all instruments negotiable which are payable to bearer, and customably transferable by delivery, within which definition we suppose the common bonds of railroad companies would fall. Of the coupons attached which have no seal, this would seem to be probable. But usage must have great influence in determining the question."

The law having generally already determined when an instrument is assignable, and the mode by which the transfer is to be effected, it is the province of the court, and not of the jury, to decide on the negotiability of these instruments, unless in new cases where the law merchant is doubtful, when evidence of custom may be received. Chit. on Bills, 220 ; Edie v. East India Co., 1 W. Black. R., 295.

In Glyn v. Baker, 13 East., 510, it was decided that India bonds were not negotiable, there being no evidence that they were circulated as negotiable paper.

In Taylor v. Kymer, 3 Barn. & Ald., 320, it was held that India warrants, directed to their warehouse-keeper, for the delivery of goods to A. B. or his assigns, were not negotiable instruments within 6 G. 4, sec. 94.

In Gorgier v. Melville, 3 Barn. & Cress, 45, it was decided that bonds of the King of Prussia, wherein he declared himself and his successors " bound to every person who should for the time being be the holder of the bond, for the payment of the principal and interest, in the manner therein pointed out," were negotiable instruments, the title to which passed by delivery, on proof that these bonds were sold in the market, and passed from hand to hand like exchequer bills.

But in Long v. Smith, 7 Bing., 284, it was held that the coupons, payable to bearer, attached to certain Neapolitan Bordereaux, were not negotiable. The question whether such coupons usually passed as negotiable instruments, independent of the bonds or instruments to which they were attached, and referred, was left to the jury, who found in the negative.

In this country, since the mania for constructing railroads on credit has obtained possession of the public mind, and the issue of bonds payable to bearer, with coupons or interest warrants attached, has become the almost universal resort, and principal capital of railroad corporations, the country has been flooded with these securities, and we have no doubt that it would appear, on inquiry, that the custom has become general to pass such bonds from hand to hand, as negotiable instruments. But whether coupons when disconnected from the bonds with which they were issued, thus pass, we think is by no means so certain. No difficulty, however, is perceived in so framing coupons or interest warrants as to give them the character of negotiable instruments, independent of the bonds to which they were originally attached, if the parties issuing such bonds and coupons so desired. But to give them that independent negotiable character, without the interposition of legislation, the intention of the party issuing them must distinctly so appear upon the face of the coupon itself.

But it is contended that even if it should be held that a coupon could be transferred as an independent negotiable instrument, this action cannot be maintained, because the instrument declared on is not, technically, a coupon.

*A coupon* is defined to be a remnant shred; (papier portant interet) dividend in the public funds. Surenne's French Dict. An interest certificate, printed at the bottom of transferable bonds (state, railroad, etc.,) given for a term of years. There are as many of these certificates as there are payments of interest to be made. At each time of payment one is *cut off* and presented for payment. Hence the name

Myers *v.* York and Cumberland Railroad.

*coupon.* Web. Dict.; *eoupons,* from the French, is a term employed in England and elsewhere to denote the warrants for the payment of the periodical dividends on the public stocks, a number of which being appended to the bonds are severally *cut off* for presentation as the dividends fall due. The practice of appending coupons prevails chiefly in reference to foreign stocks. Am. Enc. Sup.

The instrument in suit refers in the margin to bond certificate No. 149, but it is not and never was annexed, attached nor appended to that bond, although it was delivered to J. G. Myers at the same time he received the bond. That bond is an instrument perfect in itself, containing no reference to any other paper. It is dated the first day of February, 1851, and provides that the defendant company shall " pay to the bearer of this bond certificate, at their office in the city of Portland, in the State of Maine, one thousand dollars in twenty years, with interest thereon, payable semi-annually from the date thereof, at said office." By the terms of the bond six months' interest fell due February 1st, 1854. By the certificate in suit thirty dollars, a sum equal to interest on the bond for six months, became due on the *tenth* of February, 1854. The bond was receipted for by Mr. Myers, on delivery, but no receipt was given for the certificate in suit. The testimony of Mr. Myers, given on cross examination, cannot be received to contradict or change the character or legal effect of the printed and written papers in the case.

From these facts and considerations we come to the conclusion that the instrument declared on was issued improvidently and without legal consideration ; that it is not a coupon or interest warrant pertaining to bond certificate No. 149 ; and that as a separate and independent instrument it is not negotiable.

The provisions of sec. 248, laws of 1856, do not apply to this case.

*Plaintiff Nonsuit.*

CUTTING and MAY, J. J., concurred; TENNEY, C. J., concurred in the result; APPLETON, J., concurred, adding the following note; and DAVIS, J., concurred with note of APPLETON, J.

NOTE by APPLETON, J. If the bonds and coupons are both to be enforced, it is apparent that the defendant corporation will be compelled to pay an amount of interest not authorized by the statutes of this state. If both were in the hands of the same holder, then payment could not be enforced. As the bonds contain a promise to pay interest, the coupons which contain a further and separate promise to pay interest must be regarded as improvidently issued.

The coupons in terms refer to the "bond certificate No. 149," and would seem to be sufficient notice of the existence of such bond, and enough to put one on inquiry as to its terms. It does not appear that the plaintiff was the holder of the coupons in suit before their maturity, for a valuable consideration, or that he came by them fairly in the due course of business, unattended with circumstances calculated to awaken suspicion. Without, therefore, deciding the question of the negotiability of coupons, it is apparent that the present action is not maintainable upon the proof before us.